UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| 405 SULLIVAN AVENUE INDUSTRIAL LLC, | ) | 3:23-CV-240 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KUHNS FAMILY PROPERTIES, LLC, | ) | July 12, 2023 |
| *Defendant*. | ) | |

**RULING AND ORDER ON PLAINTIFF'S MOTION TO STRIKE AND DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff and counterclaim Defendant 405 Sullivan Avenue Industrial LLC ("405 Sullivan") initiated the present breach of contract action against Defendant and counterclaim Plaintiff Kuhns Family Properties, LLC ("Kuhns"), relating to 405 Sullivan's purchase of a property from Kuhns. In response, Kuhns filed an answer raising various affirmative defenses and a counterclaim for attorney fees under the parties' contract. 405 Sullivan then filed the present motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), seeking to dismiss Kuhns' counterclaim and strike two of Kuhns' affirmative defenses. For the following reasons, the Court GRANTS IN PART and DENIES IN PART 405 Sullivan's motion.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The pleadings contain the following factual background. Early in 2022, Kuhns entered into a contract with PADS Property Holdings LLC ("PADS"), 405 Sullivan's alleged predecessor in interest, regarding the purchase and sale of a commercial real property located at 405 Sullivan

Avenue in South Windsor, Connecticut. Compl., ECF No. 1, ¶¶ 8, 10.[1] Under that contract, Kuhns agreed to sell the property to PADS for $1.5 million. *Id.* ¶¶ 8–9. Kuhns admits that it entered into a contract to sell the property to PADS. Am. Ans., ECF No. 12, ¶ 8; Countercl., ECF No. 12, ¶ 3. But Kuhns denies that the contract attached to 405 Sullivan's complaint is the true and accurate contract, and Kuhns attaches a contract to its answer that it contends is the true and accurate contract. Am. Ans. ¶¶ 8, 10; Countercl. ¶ 3.[2]

405 Sullivan alleges that Kuhns made certain representations and warranties in the contract about the condition of the property and its compliance with applicable laws, rules, and regulations, all of which appear to be contained in the version of the contract supplied by Kuhns as well. Compl. ¶¶ 13–15; Ex. A to Am. Ans., ECF No. 12-1, at 6, 9. In addition, relevant here, both parties' versions of the contract contained identical indemnity clauses, under which Kuhns agreed to indemnify PADS from any losses arising from Kuhns's breach of any of its representations, warranties, or obligations set forth in the contract. Ex. A to Compl., ECF No. 1-1, at 11; Ex. A to Am. Ans. at 10. Finally, both versions of the contract also contained identical survival clauses, which provided that all of Kuhns's representations and warranties as set forth in the contract would survive the closing on the purchase and sale of the property for a period of six months. Ex. A to Compl. at 11; Ex. A to Am. Ans. At 10.

---

[1] 405 Sullivan alleges that, after Kuhns and PADS executed the purchase and sale agreement but before the closing, PADS assigned its rights and interests under the agreement to 405 Sullivan, and it further alleges that Kuhns was aware of and consented to the assignment. Compl. ¶¶ 10–11. Kuhns denies that it was aware of or consented to the assignment, Am. Ans., ECF No. 12, ¶ 11, but Kuhns does not suggest that this factual dispute impacts the present motion.

[2] Because the parties' pleadings reference and rely on the versions of the contract attached to them, the Court will consider the attached versions of the contracts for purposes of the present motions to strike and dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (explaining that the complaint includes any written instrument attached to it and any document considered integral to the complaint); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 454 (S.D.N.Y. 2005) (explaining that "it is well settled that on a motion to dismiss, where the validity of contracts is challenged, the court may review and properly consider the terms of the contracts that were referenced in the pleadings"); *Meisels v. Meisels*, No. 19-CV-4767(EK)(RML), 2021 WL 1924186, at *8 (E.D.N.Y. May 13, 2021) (considering a contract referenced in a pleading for the purpose of a motion to strike).

On July 7, 2022, Kuhns conveyed its interest in the property to 405 Sullivan through a warranty deed. Compl. ¶ 19; Am. Ans. ¶ 19. After the closing, 405 Sullivan identified several allegedly defective conditions at the property, particularly concerning the roof, which required costly repair and replacement. Compl. ¶¶ 21–26. In addition, the property allegedly failed to comply with many sections of the Town of Windsor's fire code during a post-closing inspection, and presented other ancillary issues. *Id.* ¶¶ 28–31. 405 Sullivan alleges that Kuhns either knew or should have known of these defective conditions at the time of the closing, but failed to disclose them to 405 Sullivan. *Id.* ¶¶ 27, 29, 31. 405 Sullivan alleges that, on December 29, 2022, it notified Kuhns that Kuhns was in default under the contract and demanded that Kuhns indemnify 405 Sullivan for all costs, including attorneys' fees, incurred by 405 Sullivan as a result of the default. *Id.* ¶ 35.

On February 23, 2023, 405 Sullivan initiated the present action against Kuhns, seeking indemnification under the contract due to Kuhns' alleged breaches of that contract. *Id.* ¶¶ 16–17, 35. Specifically, 405 Sullivan raises the following claims: breach of contract (Count One), *id.* ¶ 38; breach of the implied covenant of good faith and fair dealing (Count Two), *id.* ¶ 42; negligent misrepresentation (Count Three), *id.* ¶ 45; fraudulent misrepresentation (Count Four), *id.* ¶ 51; and violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-100a *et seq.* (Count Five), *id.* ¶ 58. Thereafter, Kuhns filed its operative answer to the complaint, raising several affirmative defenses and a counterclaim for attorneys' fees under the contract. *See generally* Am. Ans. 405 Sullivan then filed the present motion, seeking to strike two of Kuhns' affirmative defenses and to dismiss Kuhns's counterclaim.

## II.     MOTION TO STRIKE

405 Sullivan seeks to strike Kuhns' fourth and fifth affirmative defenses. For the following reasons, the Court grants 405 Sullivan's motion with respect to Kuhns' fourth affirmative defense, but the Court denies 405 Sullivan's motion with respect to Kuhns' fifth affirmative defense.

### A. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The general purpose of motions to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) (citations and internal quotation marks omitted). Because striking a pleading is a "drastic remedy," however, motions to strike are generally disfavored and will not be granted unless the moving party clearly shows that "the challenged matter has no bearing on the subject matter of the litigation." *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102–03 (D. Conn. 2008); *see Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)).

In order to succeed on a motion to strike an affirmative defense, the movant carries the burden of establishing "that (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law that might allow the defense to succeed; and (3) they would be prejudiced by the inclusion of the defense." *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 78 (D. Conn. 2015); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (discussing these factors). The first two elements examine the factual and legal sufficiency of the asserted defense under the familiar plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *GEOMC*

4

*Co.*, 918 F.3d at 98; *see also Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010). Because "applying the plausibility standard to any pleading is a 'context-specific' task," however, the nature of the affirmative defense is "relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense." *GEOMC Co.*, 918 F.3d at 98 (quoting *Iqbal*, 556 U.S. at 679). Importantly, substantial questions of law requiring significant interpretation and analysis are generally not properly resolved on motions to strike. *See, e.g.*, *Salcer*, 744 F.2d at 939; *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997); *Green v. Schmelzle*, 210 F. Supp. 3d 454, 465 (W.D.N.Y. 2016). The final element considered on a motion to strike, regarding the prejudice associated with the affirmative defense, often depends on whether the defense was timely presented. *See GEOMC Co.*, 918 F.3d at 99; *Walters*, 124 F. Supp. 3d at 79. Ultimately, motions to strike are left to "the district court's sound discretion." *Fed. Deposit Ins. Co. v. Raffa*, 935 F. Supp. 119, 123 (D. Conn. 1995).

### B. Fourth Affirmative Defense

First, the Court GRANTS the motion to strike Kuhns' fourth affirmative defense, which provides that 405 Sullivan's complaint fails to state a plausible CUTPA claim because 405 Sullivan has not alleged "that it mailed a copy of the Complaint to the Attorney General and Commissioner of Consumer Protection as mandated by Conn. Gen. Stat. § 42-110g(c)." Am. Ans. at 7. In moving to strike this defense, 405 Sullivan contends that Connecticut courts have not required a plaintiff to allege that the complaint was mailed to the Attorney General and Commissioner of Consumer Protection in order to plausibly state a CUTPA claim and that, in any event, it did in fact mail a copy of its complaint to those state officials. ECF No. 17-1 at 3. In response, Kuhns acknowledges that its fourth affirmative defense has been rendered moot because 405 Sullivan mailed a copy of the complaint to those state officials. The Court renders no opinion

on whether such mailing was required or whether 405 Sullivan should have pleaded that this requirement was satisfied. Nevertheless, the Court GRANTS 405 Sullivan's motion to strike Kuhns' fourth affirmative defense, due to Kuhns' representation that the fourth affirmative defense is now moot.

### C. Fifth Affirmative Defense

Kuhns' fifth affirmative defense asserts that 405 Sullivan's claims are barred by the contractual limitation period set forth in the contract's survival and indemnity clauses. Am. Ans. at 7. The Court DENIES the motion to strike this defense because there are questions of both law and fact that may allow the defense to succeed, and because 405 Sullivan suffers no prejudice from Kuhns' inclusion of the defense.

#### 1. Questions of Law and Fact

To begin, Kuhns' fifth affirmative defense presents interrelated questions of law and fact regarding contract interpretation that may allow the defense to succeed. Kuhns argues that the survival and indemnity clauses effectively limit its contractual obligations to a period of six months after the closing date of July 7, 2022, and that 405 Sullivan's claims, which were initiated on December 29, 2022, were untimely brought. 405 Sullivan seeks to strike Kuhns' fifth affirmative defense on the ground that the survival and indemnity clauses cannot be construed as setting a six-month limitation period to initiate a civil action under the contract. The parties' arguments make clear that the question of contract interpretation presents a substantial, contested question of Connecticut law that implicates factual disputes regarding the parties' intent. None of these issues are properly resolved on the present motion to strike.

Under Connecticut law, contract interpretation generally presents an initial question of law, namely, "whether contractual language is plain and unambiguous." *Cruz v. Visual Perceptions,*

6

*LLC*, 311 Conn. 93, 101–02 (2014); *see also Morrison v. Prime Tech., LLC*, No. 3:07-CV-1705 (CSH), 2009 WL 455254, at *2 (D. Conn. Feb. 23, 2009). When the contract language is "definitive" and unambiguous, interpreting and applying that language remains a question of law. *Cruz*, 311 Conn. at 101 (citations and internal quotation marks omitted); *see also Centerplan Constr. Co. v. City of Hartford*, 343 Conn. 368, 389 (2022). When the contract language is ambiguous, interpretation and application of that language requires delving deeper into the parties' intent, which is a question of fact. *Cruz*, 311 Conn. at 101; *accord Poole v. City of Waterbury*, 266 Conn. 68, 88 (2003). A contract is unambiguous when "its language is clear and conveys a definite and precise intent"; conversely, a contract is ambiguous when the language "is susceptible to more than one reasonable interpretation." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 446 (2d Cir. 2005) (quoting *United Illuminating Co. v. Wisvest–Conn., LLC.*, 259 Conn. 665, 670–71 (2002)).

Kuhns' fifth affirmative defenses presents a threshold substantial question of law, specifically, whether the contract's survival and indemnity clauses clearly and unambiguously create a six-month limitation period on 405 Sullivan's ability to initiate a civil action under the contract. Connecticut General Statutes § 52-576(a) sets a six-year statute of limitation for breach of contract claims, but Connecticut courts have held that parties to a contract "may contractually provide for a reasonable limitation period for filing suit that is shorter than" the applicable statute of limitation. *See Gianetti v. Greater Bridgeport Individual Prac. Ass'n*, No. X02CV024001685, 2005 WL 2078546, at *3 (Conn. Super. Ct. July 21, 2005) (citing, among others, *Monteiro v. Am. Home Assur. Co.*, 177 Conn. 281, 283 (1979)); *Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc.*, 699 F. Supp. 2d 462, 471 (D. Conn. 2010) (citing, among others, *Bocchino v. Nationwide Mut. Fire Ins. Co.*, 246 Conn. 378, 388 (1998)). When a contract reflects the parties' intention to

7

set a shorter limitation period for bringing suit, courts will enforce the limitation period as long as it is reasonable under the circumstances. *Air Brake Sys., Inc.*, 699 F. Supp. 2d at 473; *see also Collins v. Peerless Ins. Co.*, No. CV030194954, 2004 WL 114490, at *3 (Conn. Super. Ct. Jan. 6, 2004). When the contract cannot be read to suggest that the parties intended to create such a limitation, however, courts have refused to interpret the contract as setting such a limitation. *See Gianetti*, 2005 WL 2078546, at *3.

In the present motion to strike, 405 Sullivan asks the Court to interpret the survival and indemnity clauses as not clearly setting a six-month limitation period to initiate a breach of contract claim. But the Court cannot do so on the present motion to strike because Kuhns reasonably contends that the contract is ambiguous about whether it sets a six-month limitation period. The survival clause provided, in relevant part, that all of Kuhns' "representations" made in the contract, and Kuhns' obligations under the indemnity clause, would "survive recordation of the Deed and Closing hereunder for a period of six (6) months." Ex. A to Compl. at 11; Ex. A to Am. Ans. at 10. The indemnity clause provided, in relevant part, that Kuhns agreed to indemnify 405 Sullivan for "any and all, cost, claims, liability, damages and expenses, including without limitations, reasonable attorneys' fees (whether or not suit is actually filed) arising as the result of a breach of any of the representations . . . agreements or obligations" of Kuhns in the contract. Ex. A to Compl. at 11; Ex. A to Am. Ans. at 10. The parties' conflicting interpretations of these clauses turn on the ambiguity of the phrase that Kuhns' "*representations*" shall "*survive* recordation of the Deed and Closing" in the survival clause. 405 Sullivan argues that this clause limits the lifespan of Kuhns' warranties, but not the lifespan of a civil action by 405 Sullivan to vindicate its contractual rights. ECF No. 17 at 10. Kuhns, on the other hand, argues that it is reasonable to interpret the survival clause and indemnity clauses together as setting a six-month limitation period to initiate a civil

8

action because, if Kuhns' representations and indemnity obligation do not survive the six-month period, 405 Sullivan cannot bring an action for breach of contract after that period has expired. ECF No. 20 at 4. Based on the legal arguments and factual record presently before the Court, both parties' proposed interpretations of the relevant contract language appear reasonable, and the motion to strike is not the proper vehicle to resolve the question of whether there is any ambiguity in the contract.

If the relevant contract language is indeed ambiguous, the parties' conflicting interpretations also implicate questions of fact as to the parties' intent: specifically, whether they actually intended for the survival and indemnity clauses to operate as a six-month limitation period. *See Poole*, 266 Conn. at 88 (explaining that "ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact" (citations and internal quotation marks omitted)). Preliminary motions are generally denied in the presence of contractual ambiguity due to the unavailability of extrinsic evidence that could help resolve contradictory interpretations. *See, e.g.*, *JGB (Cayman) Newton, Ltd. v. Sellas Life Scis. Grp. Inc.*, No. 18-CV-3095(DLC), 2018 WL 5266877, at *8 (S.D.N.Y. Oct. 23, 2018) ("If an ambiguity exists, then a court may consider extrinsic evidence to determine its meaning. . . . Because such evidence involves factual disputes, however, it is generally inappropriate for resolution on a motion to dismiss or for judgment on the pleadings."); *Jujamcyn Theaters LLC v. Fed. Ins. Co.*, No. 20-CV-6781 (ALC)(JW), 2023 WL 2366789, at *7 (S.D.N.Y. Mar. 6, 2023) (denying a motion for judgment on the pleadings in light of ambiguous contract language and the availability of extrinsic evidence at a later stage). *Cf. Meisels*, 2021 WL 1924186, at *10 (granting motion to strike where contract was susceptible to only one reasonable interpretation).

As the movant, 405 Sullivan bears the burden to show that there is only one reasonable interpretation of the relevant contract language that comports with the parties' intent, and, therefore, that there is no substantial question of law or fact that might allow the defense to succeed. *See Walters*, 124 F. Supp. 3d at 78. 405 Sullivan's arguments that the survival clause should not be interpreted as setting a contractual limitation period fail to make such a showing, however. *See Jujamcyn Theaters LLC*, 2023 WL 2366789, at *8 (denying motion to strike where the plaintiff did not explain why an affirmative defense was implausible). For example, 405 Sullivan attempts to analogize this case to *Gianetti*, in which a Connecticut trial court found that certain language referring to administrative claims did not set a contractual limitation period for initiating a civil action. *Gianetti*, 2005 WL 2078546, at *3. But *Gianetti* was decided at the summary judgment stage with the benefits of discovery and full briefing on the contract interpretation issue, both of which are lacking in the present motion to strike. To the extent 405 Sullivan suggests that a six-month limitation period would be absurdly short, the Court is not inclined to agree at this early stage of the case, given that 405 Sullivan has not identified any circumstances or evidence to support that suggestion. Moreover, one court in this District has held that a six-month contractual limitation period was reasonable under Connecticut law. *Air Brake Sys., Inc.*, 699 F. Supp. 2d at 473.

Because the contract appears ambiguous regarding whether the parties intended to set a six-month limitation period for initiating a civil action in the survival and indemnity clauses, the issue of contract interpretation raised by Kuhns' fifth affirmative defense presents questions of law and fact not properly resolved on the motion to strike.

*2. Prejudice*

In addition, the Court finds that 405 Sullivan will not be prejudiced if Kuhns' fifth affirmative defense is allowed to remain. As noted above, the determination of prejudice often relies on whether the defense was timely presented. *See GEOMC Co.*, 918 F.3d at 99 (explaining that prejudice "may be determinative" when "a defense is presented beyond the normal time limits of the [Federal Rules of Civil procedure], especially at a late stage in the litigation"); *Walters*, 124 F. Supp. 3d at 79 (explaining that increases in "the time and expense of trial and discovery demands" can constitute prejudice warranting striking an affirmative defense). 405 Sullivan does not dispute that Kuhns' operative answer including its affirmative defenses was timely filed at the beginning of the litigation under Federal Rules of Civil Procedure 12(a)(1)(A) and 15(a)(1)(A).

In addition, 405 Sullivan has not identified any other prejudice it will suffer if the Court denies its motion to strike, such as a significant expansion in the scope of discovery. *See Walters*, 124 F. Supp. 3d at 80 (denying a motion to strike where the plaintiff did not identify any prejudice arising from the inclusion of the defense); *Alfonso v. FedEx Ground Package Sys.*, No. 3:21-CV-1644 (SVN), 2022 WL 4545888 at *5 (D. Conn. Sept. 29, 2022) (denying a motion to strike where the factual allegations underlying the defense were the same factual allegations underlying the plaintiffs' claim and thus would not expand the scope of discovery). *Cf. Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005) (granting motion to strike a defense that would require additional discovery); *Coach, Inc.*, 756 F. Supp. 2d at 428 (granting a motion to strike a defense that would "increase the duration and expense of trial"). Accordingly, the Court cannot identify any prejudice 405 Sullivan would suffer from Kuhns' inclusion of the fifth affirmative defense, which weighs against granting the motion to strike. *See Lamoureux*, 250 F.R.D. at 203; *Jujamcyn Theaters LLC*, 2023 WL 2366789, at *8.

Accordingly, the Court DENIES 405 Sullivan's motion to strike Kuhns' fifth affirmative defense.

### III. MOTION TO DISMISS

#### A. Legal Standard

405 Sullivan also moves to dismiss Kuhns' counterclaim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint or counterclaim states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint or counterclaim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

#### B. Discussion

In its counterclaim, Kuhns claims that if it is the prevailing party in the action, it is entitled to attorneys' fees and costs pursuant to the contract. Am. Ans. ¶ 5–7. In seeking to dismiss the counterclaim, 405 Sullivan cites several cases for the proposition that an award of attorneys' fees should be raised through a post-judgment motion pursuant to Federal Rule of Civil Procedure

54(d)(2)(A), rather than through a counterclaim. ECF No. 17 at 12–14. For the following reasons, the Court disagrees.

Rule 54(d)(2)(A) states that that a claim for attorneys' fees "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). The Rule's official commentary explains that attorneys' fees sought under the terms of a contract are fees recoverable as an element of damages, and as such, are typically claimed in a pleading. Fed. R. Civ. P. 54 advisory committee's note to 1993 Amendment. In light of this commentary, the Second Circuit has held that the recovery of attorneys' fees pursuant to a contract "*must* be submitted to a jury as an element of damages in a counterclaim," and it cannot be awarded on a post-judgment motion. *Town of Poughkeepsie v. Espie*, 221 F. App'x 61, 62 (2d Cir. 2007) (summary order) (emphasis added). *See also McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) (explaining that, "when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees."); *Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1269–70 (11th Cir. 2000) (holding that a claim for attorneys' fees pursuant to a contract may be asserted through either a pleading or a post-judgment motion under Rule 54(d)(2)(A), but acknowledging that such claims are typically raised in a pleading).[3]

---

[3] Some courts distinguish between "claims for attorney's fees based on 'prevailing party' contractual provisions, which generally may be raised in a postjudgment motion . . . and claims for attorney's fees based on other types of contractual provisions, which generally must be proved at trial." *Lifespan Corp. v. New England Med. Ctr., Inc.*, No. 06-cv-421 (JNL), 2011 WL 3841085, at *5 (D.R.I. Aug. 26, 2011) (citations and internal quotation marks omitted); *see also Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). Here, the contractual provision Kuhns invokes in its counterclaim provides that "the losing party shall pay the prevailing party's" attorneys' fees and costs. Ex. A to Compl. at 15; Ex. A to Am. Ans. at 14. Because 405 Sullivan has not expressly argued that the viability of Kuhns' counterclaim for attorneys' fees turns on the fact that the attorneys' fee provision of the contract requires the losing party to pay the prevailing party's fees, the Court will not consider this issue.

13

Accordingly, Kuhns' claim for attorneys' fees pursuant to the terms of the contract may be raised in its pleading and proven at trial rather than in a post-judgment motion, and, indeed, it is possible that Kuhns will not be able to seek attorneys' fees if raised only in a post-judgment motion. For that reason, Kuhns' counterclaim for attorneys' fees is not necessarily improper, and 405 Sullivan has not shown that Kuhns' counterclaim is otherwise implausible. The Court thus DENIES 405 Sullivan's motion to dismiss Kuhns's counterclaim for attorneys' fees.

## IV.    CONCLUSION

For the reasons described above, 405 Sullivan's motion at ECF No. 16 is GRANTED IN PART and DENIED IN PART. Specifically, the motion to strike is GRANTED with respect to Kuhns' fourth affirmative defense and DENIED with respect to Kuhns' fifth affirmative defense. In addition, the motion to dismiss Kuhns' counterclaim is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 12th day of July, 2023.

                                                      */s/ Sarala V. Nagala*
                                                      SARALA V. NAGALA
                                                      UNITED STATES DISTRICT JUDGE